AMERICAN CIGAR CO. *v.* SHEWITZ.

1. PLEADING—DECLARATION GOOD IN JUSTICE'S COURT GOOD ON APPEAL.

It is a general rule that a declaration good in justice's court, where pleadings, whether oral or written, are treated with liberality, is good on appeal.

2. SAME — DECLARATION — SUFFICIENCY—STATUTES—LANDLORD AND TENANT.

Where a lessee of a building brought an action in justice's court against the lessor on an alleged oral contract to reimburse plaintiff for payments for repairs made to the heating plant, a declaration on the common counts together with a bill of particulars fully apprising defendant of the grounds of plaintiff's claim, to the extent that he could not have been misled, was sufficient, under 3 Comp. Laws 1915, § 12454.

3. SAME—ASSUMPSIT—COMMON COUNTS—COMPLETED CONTRACT.

The common counts constitute a sufficient declaration upon a contract performed by the plaintiff, where nothing remains but the payment of money.

4. LANDLORD AND TENANT — REPAIRS — CONTRACT TO REIMBURSE LESSEE—CONSIDERATION.

Where defendant was bound by the covenants in his lease with plaintiff to provide adequate heat, and later authorized plaintiff to have repairs made to the heating plant in order to comply therewith, defendant's promise to reimburse plaintiff for payments made for said purpose was supported by a valid consideration.

Error to Wayne; Collingwood (Charles B.), J., presiding. Submitted April 17, 1923. (Docket No. 70.) Decided October 1, 1923.

Assumpsit in justice's court by the American Cigar Company against Jacob Shewitz and another for

money paid for repairs for a building.    There was judgment for plaintiff, and defendants appealed to the circuit court.    Judgment for plaintiff.    Defendants bring error.    Affirmed.

*Friedman & Meyers* (*Myron A. Schlissel,* of counsel), for appellants.

*William J. Lehmann,* for appellee.

STEERE, J.    This case was commenced and first tried in a justice's court of Wayne county where plaintiff recovered a judgment of $292.71, with costs, from which defendants appealed to the circuit court of that county where, on re-trial, plaintiff had judgment, on verdict, for like amount, with interest.

The assignments of error on which reversal is sought, as stated by defendants' counsel, come within the two following propositions:

"1. That the promise of Jacob Shewitz, defendant herein, upon which plaintiff predicates its action, was not supported by any legal consideration.

"2. That if there was consideration for defendant's promise to pay for the repair work, plaintiff could not recover thereon on a declaration on the common counts."

The pleadings in justice's court were oral according to the justice's return on appeal which shows that, "The plaintiff declared in an action of assumpsit on all the common counts; claimed damages $500 or under."    Attached to the return is plaintiff's bill of particulars, giving notice that its action is for recovery of—

"Moneys expended for repairs upon heating system and other parts of building belonging to defendants and leased by them to plaintiff at their request and for their benefit, and which were necessary to carry out defendants' obligation under the lease, to wit: $292.71."

Defendant and his wife owned a five-story building in Detroit, located on Beaubien street, occupied by the American Cigar Company as their tenant under a written lease, the terms of which do not seem to be in dispute, and neither party offered it in evidence. It appeared, however, from the oral evidence that defendant was to install in the building heating facilities adequate to furnish 75 degrees of heat at all times.

Plaintiff took possession of the building and began its operations there in the spring of 1916. Its packing department was located on the fifth floor of the building. Girls were mostly employed in that department and when winter came on the radiation on that floor proved inadequate to keep the room warm enough for them to do their work. In December, when the weather grew severe and that condition developed to a point where the work could not be regularly carried on, defendant was notified and asked to remedy it.

Plaintiff's manager, named Frant, testified that after several unsuccessful attempts he finally got defendant to go down to the building and explained to him the situation, pointed out that their contract provided for a heating capacity of 75 degrees at all times, took him to the packing department on the top floor where he could see for himself how cold it was, that the girls were gone home and operations suspended because they could not get over 40 degrees of heat in that room; that after seeing the situation and talking it over defendant said: "It is very cold here," and told Frant: "You go ahead and call up Agree (who had installed the heating plant) and have this work done and I will pay for it, will take care of it." A witness named Andrews, who was present and heard the conversation, testified that they talked about radiation and he heard defendant tell Frant "if he had not sufficient heat he should call the plumber who did the work that was already installed and have the work

done to his satisfaction and that he would pay for it. His remark was 'I will pay you for it.' "   Frant then sent for Agree and had him do the work proposed. When Agree presented his bill for it Frant referred him to defendant who refused to pay it and Agree sued plaintiff for it.

Plaintiff then paid Agree and brought this action to recover the amount of the bill from defendant. Defendant flatly denied that he ever authorized Frant to have the work done, or promised to pay for it. His claim upon the trial was that he installed a heating plant "pursuant to the lease agreement," and before he paid the plumber for it the latter brought him a letter from Frant stating it was satisfactory. On direct-examination he said in part:

"I went up to the packing floor with Mr. Frant.   I never said 'That is cold.'   *   *   *   I never promised anything.   I said, 'It is between you and Agree. Either Agree is wrong or you are wrong.'   *   *   * I told him if Agree did not make enough, so it was his claim, that he give us the O. K.,—if Agree was not make enough it was up to him.   *   *   *   I deny absolutely that I was liable for the installation of additional radiation."

On cross-examination he said of conditions at the time of the interview:

"I don't know whether it was cold or not.   I can't remember if it was cold four or five years ago.   I don't remember anything about shivering.   I don't remember whether the girls were working or not. Mr. Frant told me that it was cold on the third floor. I saw the girls working whenever I was there.   The girls were working there at that time.   *   *   *   I didn't tell him to call Agree on my account.   The sky-lights were in the building when they went into possession.   They wanted sky-lights in there so people could work in there.   ·If people wanted to work there, there was heat there too."

When Frant was asked about the certificate defend-

ant claimed to have received he stated it related to the plumbing itself, the quality of which was satisfactory, but denied that any such certificate was given as to the amount of heat or radiation.   When asked to produce the certificate, of which he had testified, defendant replied in substance that it was lost, saying:

"I have not got it.
"Q. Have you tried to find it?
"A. We have tried, yes, sir."

The trial court squarely submitted to the jury, in a plain and fair charge, the issue of whether, on the occasion in dispute, defendant told plaintiff to have the work done and promised to pay for it, with proper instructions as to burden of proof, credibility of witnesses, etc., and cautioned them, in effect, that testimony as to a lease, which had incidentally come into the case, was not the issue, and should only be considered by them, if at all, for its bearing on the credibility of witnesses in determining whether or not the conversation took place and oral promise relied on was made as claimed.   The evidence of both sides showed there was a written lease, but neither side offered it in evidence.   Plaintiff's testimony as to it and its contents was confined to what passed between Frant and defendant at the time of the claimed promise by the latter to pay for the repairs.   Defendants' counsel emphasized the fact there was a written lease both in examination of witnesses and his opening statement, introductorily saying to the jury:

"There was a lease, as you have already heard, between the parties, and that provided for 75 degrees of heat."

Throughout the trial plaintiff's counsel contended its action was not founded on the obligations in the lease, but upon a subsequent distinct oral promise by defendant to pay for certain needed repairs to the

heating plant in his building, which was recoverable under the common counts; while counsel for defendants insisted that recovery could only be had, if at all, on the written lease which should have been especially pleaded, without which all plaintiff's testimony was incompetent and a verdict should have been directed for defendants as requested. Had defendant in that interview refused, as he claims, to pay for the proposed work and plaintiff then had it done at its own expense, in order to be able to continue operations in that part of the building, and thereafter sued to recover the expense from defendants, the latter's contention would be more persuasive.

This case was commenced in justice's court where oral pleadings are permissible, and whether oral or written are treated with liberality. It is a general rule that a declaration good in justice's court is good on appeal. Besides declaring orally on the common counts in assumpsit plaintiff filed with the justice a bill of particulars giving notice of the exact amount claimed and what it was for. Under the circumstances of this case, as stated by defendant himself, he was fairly apprised of the grounds of plaintiff's claim to the extent that he could not have been misled as to the matter proposed to be litigated. While technically a bill of particulars is not a part of the declaration and cannot change the issue made by the pleadings it has more than once been said to be explanatory of the declaration and in amplification of it. *Nugent* v. *Teachout*, 67 Mich. 571; *Wright* v. *Dickinson*, 67 Mich. 580 (11 Am. St. Rep. 602); *Hurd* v. *Accident Co.*, 153 Mich. 474.

In this case the issue is as to the fact of an executed oral agreement, made later than the lease, under which defendant agreed with plaintiff to pay in money for repairs he authorized plaintiff to make or have made on a heating plant in defendants' building, which was

fully performed by plaintiff and nothing remained but payment of money by defendants, the defense being that there was no such agreement. In *White* v. *Taylor*, 113 Mich. 543, it is stated as a general proposition that:

"The common counts constitute a sufficient declaration upon a contract performed by the plaintiff, where nothing remains but the payment of money. Numerous decisions of this court sustain that proposition."

The rule is stated in 1 Abbott's Practice and Forms, § 498, as follows:

"With respect to debts for work and labor or other personal services, and for material used in performing the work, it is a rule that, if preceded by defendant's request, then, however special the agreement was, yet if the terms of it have been performed on plaintiff's part and the remuneration was to be in money, it is not necessary to declare specially, and the common *indebitatus* count is sufficient."

In *Richards* v. *Burroughs*, 62 Mich. 117, the issue was whether defendant had bought a quantity of wood from plaintiff or taken it into possession to sell upon commission and plaintiff recovered judgment on the theory of a sale. It was there said:

"The contract was executed upon his part, and the only breach of it upon the part of defendant was a refusal or neglect to pay over money, the amount of which was easily ascertained and not disputed. Nothing remained to be done by either party except the payment of the price of the wood. This could be recovered under the common counts."

Without reviewing at length the cases cited for defendant to sustain his contention that a special contract must be especially pleaded it is sufficient to say they were of a type to which the foregoing rule does not apply. In *Applebaum* v. *Goldman*, 155 Mich. 369, a leading case of that class, defendant sold plaintiff,

under a written agreement, a miscellaneous quantity of machinery and other articles for a lump sum and, as plaintiff claimed, only delivered a portion of them; in other words failed to fully perform on his part, and plaintiff sued him for breach of the contract, claiming as measure of damages the value of the articles not delivered as to which there was no agreement.

In the line of eliminating needless technicalities and simplifying pleadings it is provided in our judicature act (3 Comp. Laws 1915, § 12454):

"* * * No declaration shall be deemed insufficient which shall contain such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend."

This declaration with its explanatory bill of particulars met that test.

The contention that the promise on which plaintiff's action was brought is unenforceable because without legal consideration is based upon the proposition found in *Rhoades* v. *Seidel*, 139 Mich. 608, to the effect that in the absence of a special agreement the lessor is not bound to make repairs and a promise to do so after the lessee has gone into possession is a *nudum pactum*. Here the lessor had before promised in his lease heating equipment adequate for 75 degrees of heat, which it may be fairly presumed actuated him in making the promise to pay for the repairs. Had he promised plaintiff no more than to himself make the repairs, or have them made, and failed to keep his promise, plaintiff might have been relegated for redress to the covenants in the lease, but plaintiff was under no obligations to make them or pay for having them made. The proposal which actuated it to do so was defendant's promise to pay for them if it would. By its acting on his promise defendant was not only relieved of liability to an action for violation of the covenant in his lease but plaintiff incurred liability

and expense, which it was under no obligation to incur, in reliance on it, and by performing the conditions of the promise clothes it with a valid consideration.

"Indeed there is a consideration if the promisee in return for the promise does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." 9 Cyc. p. 312.

The judgment is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.